# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JENNIFER RUSH<br>*on behalf of herself and*<br>*others similarly situated*, | )<br>)Civil Action No.: 6:26-cv-3157<br>) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SELECTQUOTE INSURANCE<br>SERVICES INC. | )<br>) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION
## TO THE DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ...................................................................................................... 4

  A. Legal Background ........................................................................................ 4

  B. Factual Background ..................................................................................... 6

ARGUMENT .......................................................................................................... 7

I.    Text Messages Are Considered "Calls" Under the TCPA ............................. 7

  A. The Do Not Call List Provisions in TCPA § 227(c)
     Authorize the FCC to Prohibit Text Messages ............................................ 8
    i. The plain meaning of the word "call"
      includes text messages ...................................................................... 8
  B. That Interpretation of the Word "Call" Aligns
    Section 227(c)'s Private Right of Action with
    Its Substantive Provisions ........................................................................ 13
  C. SelectQuote's Arguments for a Narrower
    Interpretation Are Unpersuasive ............................................................... 15
  D. Any Doubt That Section 227(c) Covers Text
    Messages Should Be Resolved by Deference
    to the FCC's Longstanding Interpretation ................................................ 23

II.   Defendant's Personal-Registration Argument
    Fails as a Matter of Law .............................................................................. 27

CONCLUSION ..................................................................................................... 30

# TABLE OF AUTHORITIES

CASES

*Abbas v. Selling Source, LLC*, No. 09 C 3413, 2009 WL 4884471 (N.D. Ill. Dec. 17, 2009) ....................................................................................................... 11

*Alvarez v. Fiesta Nissan, Inc.*, No. SA-25-CV-00084, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026) ................................................................................................ 17, 21

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Ohio*, 708 F.3d 737 (6th Cir. 2013) ............................................................................ 9

*Callier v. Am.-Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022) .......................................... 29–30

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) .................................. 8, 26

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ...... 13

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) ............. 21

*Dawson v. Portfolio Recovery Assocs., LLC*, 2024 WL 4765159 (D. Md. 2024) .22

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980) ........................................... 16–18

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ............................ 26

*Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. 2025) .............................. 13

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) .................... 10, 21

*Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026) .......... passim

*Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513 (M.D.N.C. 2024) ........... 10

*Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) .............................. 5, 20, 24

*In re Erickson*, 815 F.2d 1090 (7th Cir. 1987) ................................................. 17

*Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860 (7th Cir. 2016) ........................... 8

*Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019) ..................... 6, 19

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) ...................................................................................................... passim

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .......................... passim

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) ...................................................................................................... 23

*Medvidi, Inc. v. Wilson*, 2025 WL 2856295 (N.D. Cal. 2025) .................. passim

*Mey v. Liberty Home Guard, LLC*, 2026 U.S. Dist. LEXIS 739 (N.D.W. Va. 2026) ...................................................................................................... 23

*Mujahid v. Newity, LLC*, No. 24-CV-1174, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) ................................................................................ passim

*Murch v. GPS Cap. Mkts., LLC*, 2025 U.S. Dist. LEXIS 169651 (D. Or. June 6, 2025) .............................................................................. 29

*Nat'l Cable & Telecomms. Ass'n v. FCC*, 567 F.3d 659 (D.C. Cir. 2009) .... 17–18

*New Prime, Inc. v. Oliveira*, 586 U.S. 105 (2019) ........................................ 18

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917 (N.D. Cal. Mar. 3, 2025) .............................................................................. 29–30

*Pederson v. Donald J. Trump for President, Inc.*, 465 F. Supp. 3d 929 (D. Minn. 2020) ................................................................................ 12

*Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638 (S.D. Tex. 2023) .............. 20

*Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025).... 24

*Rosales v. Heath*, 2019 U.S. Dist. LEXIS 225294 (D. Neb. Dec. 31, 2019).12

*Sagar v. Kelly Auto. Grp.*, 2021 WL 5567408 (D. Mass. 2021) ................... 9

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ........... passim

*Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237 (S.D. Fla. 2019) .. 9

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168 (2025) .......... 25

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .............................................. 26

*Wilson v. Better Mortg. Corp.*, No. 25 Civ. 5503 (PAE), 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) ............................................... passim

*Wilson v. Medvidi, Inc.*,
2025 WL 2856295 (N.D. Cal. 2025) ....................................................... passim

*Wilson v. Skopos Fin., LLC*,
2025 WL 2029274 (D. Or. 2025) ............................................................ passim

*Warciak v. Subway Rests., Inc.*, 949 F.3d 354 (7th Cir. 2020) ................... 10–12

*Wisconsin Central Ltd. v. United States*, 585 U.S. 274 (2018) .................. 2, 17

STATUTES

47 U.S.C. § 227 ...................................................................................... passim

47 U.S.C. § 227(a)(4) ............................................................................. passim

47 U.S.C. § 227(b) .................................................................................. passim

47 U.S.C. § 227(c) .................................................................................. passim

47 U.S.C. § 227(c)(5) .............................................................................. passim

47 U.S.C. § 227(e)(8) .............................................................................. 22

REGULATIONS

47 C.F.R. § 64.1200 ................................................................................ passim

OTHER AUTHORITIES

In re Rules & Regulations Implementing the Telephone Consumer
Protection Act of 1991, CG Docket No. 02-278,
18 FCC Rcd. 14014 (2003) ..................................................................... passim

38 FCC Rcd. 12247 (2023) ..................................................................... passim

Pallone-Thune Telephone Robocall Abuse Criminal
Enforcement and Deterrence Act,
Pub. L. No. 116-105, 133 Stat. 3274 (2019) ............................................ 21

# **INTRODUCTION**

A 1991 law that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") prohibits sending text messages to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls.

While alpha-numeric text messaging existed in the context of mobile paging devices, text messaging on cellular telephones was not as mainstream as it is today when the TCPA was passed in 1991. But no matter: As both courts and the FCC have long recognized, the plain meaning of the word "call" in the TCPA encompasses any "communication used primarily between telephones," regardless of whether that "call" is communicated by "voice" or "text message." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607, at *2–3 (S.D. Cal. 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2–3 (N.D. Ill. 2025); *Wilson v. Medvidi*, 2025 WL 2856295, at *2–4 (N.D. Cal. 2025); *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4–5 (D. Or. 2025).

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So, any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

Defendant's motion to dismiss argues otherwise, insisting that because text messages didn't exist when the TCPA became law, the TCPA cannot cover texts. But although "every statute's *meaning* is fixed at the time of enactment," there is nothing odd about old text finding "new *applications*" as times change. *Wis. Cent.*

2

*Ltd. v. United States*, 585 U.S. 274, 284 (2018). It also doesn't matter that no one would describe a text message as a "telephone call" in "today's parlance." That's not, however, how statutory interpretation works. Courts look to a statute's ordinary "meaning at the time of … adoption" to interpret the law, not "modern intuitions." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). In fact, modern conversational parlance can be downright misleading when times have changed. *See id.* at 114–16.

Selectquote's reading has other problems, too. It hinges on a single use of the word "call" in section 227(c)(5), which creates a private right of action to enforce the FCC's Do Not Call List rules. Yet the company cannot explain why the reference in the private-action provision should be construed more narrowly than the Do Not Call List rules that it exists to enforce. It also cannot explain why the word "call" would have a different meaning there than it has in the TCPA's nearby autodialer provisions. The meaning of "call" is even clearer in that part of the statute, where Congress used "call" to describe written messages received on a pager—the most analogous technology to cellular telephone text messaging that was prevalent in 1991. *See* 47 U.S.C. § 227(b)(1)(A)(iii). If a text "call" to a pager can violate the TCPA, a text "call" to a cell phone can too. *See Lozano*, 702 F. Supp. 2d at 1004–05.

Once Selectquote's flawed interpretation of the statute is set straight, the

3

analysis here is straightforward: Plaintiff received multiple unwanted marketing texts from Selectquote within two weeks, and those texts indisputably violated the FCC's Do Not Call List rules. *See* 47 C.F.R. § 64.1200(c)(2), (e). The Plaintiff therefore "received more than one telephone call within any 12-month period … in violation of the regulations," and may sue to enforce her "privacy rights to avoid receiving telephone solicitations" that she does not want. 47 U.S.C. § 227(c)(1), (5).

## BACKGROUND

### A. Legal Background

Section 227(c) of the Telephone Consumer Protection Act empowers the FCC to decide whether to create a national Do Not Call List, and to determine the rules that will govern it. *See* 47 U.S.C. § 227(c)(1)–(4).

The guiding purpose of a Do Not Call List is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). The key operative term there is "telephone solicitations," which are defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." *Id.* § 227(a)(4). As one court recently observed, that definition is "more concerned with the purpose of the telephone communications [that are prohibited] than the form in which those communications are transmitted." *Wilson v. Medvidi, Inc.*, 2025 WL

4

2856295, at *3 (N.D. Cal. 2025)*; see, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493, 497–500 (7th Cir. 2025) (Do Not Call List liability turned on whether a text message had the requisite commercial purpose).

The statute grants the FCC broad discretion to determine the rules governing the Do Not Call List. The statute expressly empowers the FCC to make rules "that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). And it directs the FCC to evaluate alternative approaches based on open-ended criteria such as their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." *Id.* § 227(c)(1)(A).

Any Do Not Call List regulations that the FCC establishes must meet certain statutory criteria. *See id.* § 227(c)(3)–(4). For example, the rules must require phone companies to notify their subscribers about the Do Not Call List, and must specify how frequently the list will be updated. *Id.* § 227(c)(3)(B), (c)(3)(I). And— as relevant here—the statute specifies that the FCC's rules must "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber" on the national Do Not Call List. *Id.* § 227(c)(3)(F).

Finally, section 227(c)(5) provides for private enforcement of the FCC's Do Not Call List rules. That provision grants an express private right of action to any "person who has received more than one telephone call within any 12-month

5

period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under the Do Not Call List rules. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019).

The FCC's implementing regulations for the Do Not Call List include 47 C.F.R. § 64.1200(c)(2), which generally prohibits "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number" on the Do Not Call List. The FCC has also determined in a series of orders and, more recently, in a formal regulation, that this rule applies to "calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

## B. **Factual Background**

Plaintiff Jennifer Rush brings this action under the TCPA, on behalf of herself and a proposed nationwide class of similarly situated individuals. ECF No. 1 ¶¶ 1, 26. Defendant SelectQuote Insurance Services Inc. ("SelectQuote") is an insurance company headquartered in Texas. *Id.* ¶ 7. Plaintiff is the regular and sole user of cellular telephone number (417) XXX-XXXX and has used that number as her personal residential telephone number since July 25, 2025. *Id.* ¶¶ 8–10. Plaintiff uses the number solely for personal and household purposes, primarily to communicate with friends and family, schedule personal appointments, and conduct other household affairs. *Id.* ¶¶ 12–15. She has never used the number for

business purposes, has never associated it with a business, and has never used it in any business or marketing materials. *Id.* ¶¶ 16–17.

Plaintiff's telephone number has been registered on the National Do Not Call Registry since January 1, 2008. *Id.* ¶ 11. More than thirty-one days after that registration, Defendant delivered, or caused to be delivered, at least two telemarketing text messages to Plaintiff's telephone number on October 10, 2025 and October 24, 2025. *Id.* ¶ 18. Plaintiff alleges that she never provided Defendant with prior express consent or permission to send telemarketing text messages to her telephone number, nor did she request information or promotional materials from Defendant. *Id.* ¶¶ 22–23. Plaintiff further alleges that the messages constituted telephone solicitations and that Defendant knew, or should have known, that her telephone number had been listed on the National Do Not Call Registry. *Id.* ¶¶ 21, 25.

**ARGUMENT**

## I.     Text Messages are Considered "Calls" under the TCPA.

Selectquote Health contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect.

Moreover, because section 227(c) is structured as an express delegation of discretionary authority to the FCC, any doubt about the answer here simply means

7

that Congress intended the agency's reasonable judgment to control.

Post *McLaughlin* and *Loper Bright*, the majority of courts have concluded that under the TCPA text messages are calls. Indeed, courts in more than thirteen districts and the only circuit court to directly address the issue, the Ninth Circuit, have held the DNCR provision covers text messages. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. Jan. 13, 2026) (reaffirming text messages are "calls" post *Jones*). The Supreme Court has also weighed in on the issue in the context of the TCPA's robocalls provision. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'").

**A. The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.**

**i.     The plain meaning of the word "call" includes text messages**

To interpret a statutory term, courts "look to the meaning of the word at the time the statute was enacted, often by referring to dictionaries." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016). Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th

at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of "telephone call" was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortgage Corp.*, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025).

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Wilson*, 2025 WL 3493815 *5; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1007 (N.D. Ill. 2010); *Sagar v. Kelly Auto. Grp.*, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). Texting is, of course, a means of communicating with someone by telephone. (Selectquote hasn't

9

disputed that a text is a "telephone" communication; of course it is.) So text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954)).

The established definition of "telephone call" in the TCPA therefore readily encompasses texts. *See, e.g.*, *id.*, *Lozano*, 702 F. Supp. 2d at 1007; *Wilson v. Medvidi*, 2025 WL 2856295, at *2 (N.D. Cal. 2025)*; Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2 (N.D. Ill. 2025). Both the Ninth and Seventh Circuits have said, in cases alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciakv. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. Other courts, too, have "routinely found that the phrase 'call' in subsection (b) … includes text messages." *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *7 n.6 (M.D.N.C. 2024). And, absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). So the consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

10

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, 2009 WL 4884471, at *4 (N.D. Ill. 2009).

Defendant argues that cases such as *Satterfield*, *Warciak*, and *Howard* are distinguishable because they arose under § 227(b) rather than § 227(c). That distinction is immaterial. The question in those cases was the meaning of the same statutory term—"call"—used elsewhere in the TCPA. And "identical words used in different parts of the same statute are generally presumed to have the same meaning." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). SelectQuote identifies no textual basis for giving the word "call" one meaning in § 227(b) and a different meaning in § 227(c)(5). To the contrary, the consistent-usage

11

canon strongly supports applying those courts' interpretation of "call" here. The *Better Mortg.* Court also held likewise, "The weight of the…authority concerning § 227(b) strongly suggests that § 227(c)'s parallel usage of "telephone call[s]" applies to text messages.".

Courts within the Eighth Circuit have likewise long recognized that text messages qualify as "calls" under the TCPA. *See Rosales v. Heath*, 2019 U.S. Dist. LEXIS 225294, at *5 (D. Neb. Dec. 31, 2019) ("It is undisputed that text messages constitute 'calls' under the TCPA."); *Pederson v. Donald J. Trump for President, Inc.,* 465 F. Supp. 3d 929, 934 (D. Minn. 2020) (observing that there is "no marked difference between the intrusiveness of a call and a text" and concluding that text messages inflict the same type of injury Congress sought to remedy through the TCPA); *Cross v. State Farm Mut. Auto. Ins. Co.,* 2022 U.S. Dist. LEXIS 10676, at *17 (W.D. Ark. Jan. 20, 2022) (relying on Eighth Circuit precedent and other district court authority recognizing that unwanted text messages cause cognizable TCPA injuries).

Courts in this Circuit have also recognized that unwanted text messages may be at least as intrusive as traditional voice calls because they demand the recipient's attention, consume device resources, and invade the same privacy interests protected by the TCPA. *See Pederson*, 465 F. Supp. 3d at 934 (discussing *Yashtinsky v. Walmart, Inc.,* No. 5:19-cv-5105, 2019 WL 5986708 (W.D. Ark. Nov. 12, 2019)).

12

These decisions reflect the same settled understanding that text messages are a form of telephone communication and are not categorically excluded from the statute's use of the term "call." That longstanding understanding further confirms that interpreting "call" in § 227(c)(5) to encompass text messages is consistent not only with the statute's text and structure, but also with how courts within the Eighth Circuit have understood the TCPA for years.

**B.  That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.**

Much of Selectquote's argument focuses on the single use of the word "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g., Harriel v. Bealls, Inc.*, 2025 WL

13

2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes, with certain exceptions not relevant here. 47 U.S.C. § 227(a)(4) (emphasis added). A text message, no less than a voice call, can be "transmitted." *See, e.g.*, *Transmit*, *Random House Webster's College Dictionary* (1991) ("to send a signal by radio waves or by wire"). And the reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990) (emphasis added).[1] So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums.

---

[1] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

14

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025). Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

## C. Selectquote's arguments for a narrower interpretation are unpersuasive.

Selectquote would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the word "call" in section 227(c)(5) can only mean an "auditory communication[]," and therefore the statute categorically excludes text messages. The cases it asserts show support for its arguments are mainly three district court cases, *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025)—which is currently on appeal before the Seventh Circuit—*Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025) and *El Sayed v.*

15

*Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at \*2 (M.D. Fla. Oct. 24, 2025). But none of the arguments made by Selectquote or in those cases are persuasive.

Consider first how Selectquote reads the word "call" in section 227(c)(5). It repeats a few basic arguments for reading that word as implicitly limited to voice calls. But all of them go about interpreting the statute wrong.

First, Selectquote (parroting *Jones*) insists that "call" cannot encompass text messages because "in 1991," "text messages did not exist." (*Jones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991)); *see id.* at 33 (quoting *El Sayed*, 2025 WL 2997759, at \*3 for "observ[ing] that 'in common American English usage, a "telephone call" and a "text message" are separate and distinct forms of communication'"). That's not how statutory interpretation works. It's true that text messaging was not mainstream in 1991. *See Medvidi*, 2025 WL 2856295, at \*2. But, it is black-letter law that statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980) (collecting cases). Instead, "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 2d at 1008.

There's nothing unusual about that. "While every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in

16

light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). As Judge Easterbrook explained, statutory terms generally identify a class of things rather than a specific technology. Thus, technological evolution does not remove a new device from an existing statutory category when it performs the same core function. *In re Erickson,* 815 F.2d 1090, 1092–93 (7th Cir. 1987).

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "telephone call"—which "refers to both oral and written communications"—is what matters. *Id*.; *see Lozano*, 702 F. Supp. 2d at 1007. Applying Judge Easterbrook's analysis to section 227(c)(5), a court recently explained that, "[j]ust as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone." *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930, at *5 (S.D. Tex. Jan. 26, 2026). "Thus, to make a 'telephone call,' for purposes of § 227(c)(5), is 'to get into communication' with" a "telephone," no matter if through oral or written communication. *Id.* And that remains true even if text messages were not the "particular manifestation of [the] problem" that Congress had front of mind when it was legislating. *Nat'l Cable & Telecomms. Ass'n v. FCC*, 567 F.3d 659, 665 (D.C. Cir. 2009); *see*

17

*Diamond*, 447 U.S. at 315; *Hively*, 853 F.3d at 344–45. "[T]he fact that text messages had not yet been invented when Congress wrote the TCPA does not foreclose that it intended for the statute to cover future technology." *Wilson v. Better Mortg. Corp.*, No. 25 CIV. 5503 (PAE), 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025).

Next, SelectQuote argues that a text message is not a "telephone call" in modern parlance. But modern usage is not the relevant inquiry. Courts interpret statutory language according to its ordinary meaning at the time of enactment, not according to contemporary linguistic conventions. *See New Prime, Inc. v. Oliveira,* 586 U.S. 105, 114–16 (2019). Thus, even if today's speakers commonly distinguish between calls and texts, the question is what "telephone call" meant when Congress enacted the TCPA in 1991. As explained above, contemporaneous dictionaries defined a telephone call broadly as an attempt to communicate by telephone, a definition that readily encompasses text messages. *See Howard,* 164 F.4th at 1123–24.

Selectquote's interpretation fares no better when it comes to the broader statutory context in which the word "call" in section 227(c)(5) appears. Selectquote barely engages with the substantive Do Not Call List provisions of the statute in the remainder of section 227(c). That reading of the statute doesn't work. Selectquote fails to identify any reason Congress would have intended that odd

18

result. And the text of section 227(c)(5) suggests otherwise—first, by being much more explicit about different ways that the private right of action actually is limited (requiring "more than one" call "within any 12-month period"); and, second, by linking the private right of action to "violation of the regulations prescribed under this subsection" (not any particular subset thereof). The reference to "violation of the regulations," in particular, suggests that section 227(c)(5) is simply "a straightforward provision designed to achieve a straightforward result"—making violations of the FCC's rules actionable. *See Krakauer*, 925 F.3d at 650.

If Congress wanted to limit *only* the private right of action in section 227(c)(5) to voice communications, implicitly doing so by using the word "call" would have been a strange way to go about it. After all, the word "call" *does* include textual communication in other provisions of the statute. If Congress intended to cabin section 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have done so by using a term that elsewhere *includes* them.

Because it's doubtful that Congress intended section 227(c)(5) to have a narrower scope than the Do Not Call List regulations it exists to enforce, the much better reading of "call or message" in section 227(a)(4) is that it instead signals Congress's intent to inclusively define the kinds of "telephone solicitations" that can be prohibited. The definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various

19

kinds of commercial transactions. 47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce*, 132 F.4th at 497–500 (Do Not Call List liability turned on whether a text message had the requisite commercial purpose).

At the same time, the statute uses broad and inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication mediums, including text messages. *See Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (rejecting an argument that "text messages are not actionable" under section 227(c) because it "fails in the face of the statutory text, which refers to 'telephone call[s] or message[s]'"). The statutory definition of "telephone solicitation" therefore "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2 (same).

Selectquote also has no good answer for nearby uses of the word "call" in section 227(b), the autodialer provisions of the original TCPA. Indeed, the meaning of "call" is especially clear in section 227(b) because it's used there to describe a

20

(typically text-focused) transmission to a "paging service." *See supra*, Part I.A. Congress has even "ratified" the longstanding interpretation from "the FCC as well as myriad courts" that "telephone call" "in § 227(b) [] include[s] text messages." *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930 *6 (S.D. Tex. Jan. 26, 2026); *see Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in § 227(b) by providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). "Where, as here, Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation, we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986).

And reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. Absent good reason to think otherwise, "identical words used in different parts of the same statute" carry "the same meaning." *See Henson*, 582 U.S. at 85. As the FCC recently explained, it would be "anomalous" to give the word "call" a narrower meaning in section 227(c)(5) than it has elsewhere in the TCPA. 38 FCC Rcd. at 12257 ¶ 27. Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. So "there is no reason to believe that ['call'] has a different

21

meaning when used in the do-not-call provisions." *Dawson*, 2024 WL 4765159, at *5.

Nor is Selectquote right to assert that under section 227(e)(8), "call" and "text message" are "distinct." If anything, section 227(e)(8) actually reinforces that texts *are* calls in the lexicon of the TCPA. It describes a "text message" as something that comes from a "caller," just like a traditional voice call does. *See* 47 U.S.C. § 227(e)(8)(A) ("The term 'caller identification information' means information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service."). The natural takeaway is that section 227(e)(8) identifies two different types of calls—voice calls and text messages—both of which originate with a "caller" and therefore require "caller identification." And unlike Selectquote's interpretation, that reading of section 227(e)(8) accords with the meaning of "call" as that word is used elsewhere in the TCPA.

The statute's definition of "text message" also does not provide any support for Selectquote's argument that "telephone call" excludes "text message." But all that definition shows is that Congress limited the term "text message" to exclude some types of "telephone calls." That doesn't conflict with Plaintiff's argument that "telephone call" is a broad term that encompasses "text messages."

22

**D. Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation.**

The best reading of the statute is that the word "call" includes texts. But if there's any doubt about that, the FCC's interpretation should resolve it. That's because Congress expressly delegated authority to the FCC to "fill up the details" of the Do Not Call List rules. *Loper Bright*, 603 U.S. at 395. As a number of district court have held post-*Loper Bright*, section 227(c) "explicitly delegates such authority." *Skopos*, 2025 WL 2029274, at *4; *see Mey* v *Liberty Home Guard, LLC*, 2026 US Dist LEXIS 739, at *15, *19 (explaining section 227(c) "expressly delegated rulemaking authority" such that even "[u]nder *Loper Bright*," the FCC's interpretation is entitled to "deferential review"). So the FCC's longstanding reasonable interpretation of the word "call" should still carry the day. *See id*.

To be sure, mere statutory ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). And district courts are not bound by the Hobbs Act to adopt FCC interpretations; they can and should make their own assessment of the statute. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). Selectquote says this means no "deference" is permitted, so courts can now ignore the FCC's longstanding interpretation and act as if the FCC has no "persuasive authority." ECF 8-1 at 27–31. But that's incorrect.

Sometimes "the best reading of a statute is that it delegates discretionary

23

authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id*. at 394–95. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within them. *Id.* at 395; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. Congress didn't write the Do Not Call List rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility" to best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395; *see Hulce*, 132 F.4th at 497 n.1 (noting the FCC's "delegated authority" to make Do Not Call List rules). In the telecommunications

24

context, especially, an express delegation like this one is evidence that Congress expected technology "to evolve and therefore charged the [FCC] with the continuing obligation to define it." *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016). It follows that, if the statute doesn't resolve this question, Congress expected that the FCC would.

It therefore would honor Congress's intent to "respect [that] delegation" and accept the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395, 413. Exercising its expressly delegated authority, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier" and "eliminate[s] any potential confusion in the industry." 38 FCC Rcd. at 12256–57 ¶¶ 26–27 & n.59. That conclusion aligns with the FCC's determination that cell phone numbers may be listed, and that the word "call" confers protection from unwanted text messages in other TCPA contexts. *Id.* ¶ 27. Moreover, the FCC has consistently adhered to that understanding of the word "call" for more than two decades, dating back to the earliest years of the technology, when text messaging first became common. *See* 18 FCC Rcd. at 14115 ¶ 165 (July 3, 2025); 30 FCC Rcd. at 8020 ¶¶ 115–16 (July 10, 2015); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (Dec. 21, 2018). That conclusion is "reasonable and reasonably explained," and therefore warrants deference. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025).

25

Indeed, as Selectquote acknowledges, back when *Chevron* applied, courts often deferred to the FCC's judgment about the meaning of "call" in the TCPA. *See, e.g.*, *Satterfield*, 569 F.3d at 954 (granting the FCC *Chevron* "deference to hold that a text message is a 'call' within the TCPA"); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013) (following *Satterfield*). After *Loper Bright*, there are many cases where agencies' reasonable decisions are no longer entitled to deference, but this is not one of them. The FCC's judgment about the status of text messages under its rules is as worthy of deference now as it was then. *Skopos Fin.*, 2025 WL 2029274, at *4.

Alternatively, the FCC's interpretation should—at the very least—be accorded "great weight." *Loper Bright*, 603 U.S. at 388. The FCC's position is grounded in the agency's expertise, consistent across decades, and well-reasoned. Those are the hallmarks of agency action with the "power to persuade." *Id.*; *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944). The FCC's longstanding and consistent interpretation of the word "call" is thus an "informed judgment" to which this Court can "properly resort for guidance." *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 139–40); *see Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607, at *3 (S.D. Cal. 2025); *Medvidi*, 2025 WL 2856295, at *3 (accepting the FCC's interpretation as evidence of "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's

26

passage").

> **II. Defendant's Personal-Registration Argument Fails as a Matter of Law.**

The provisions of the TCPA do not require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. For that matter, such a holding would also run afoul of the FCC's 2003 TCPA Order that established the National Do Not Call Registry, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14037 (emphasis added). Registering a telephone number on the Registry does not require the provision of any personally identifiable information, and requiring such information would defeat the purposes of registration, consumer privacy. Thus, as an initial matter, the government is *not even authorized* to collect the information the Defendant claims the Plaintiff is required to prove as a legal matter. It follows that proving such information cannot be an element of a TCPA claim.

Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant

27

misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises. *See, e.g.*, *Watson*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) (holding that "whether each class member registered their number on the NDNCR is irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023); *D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called party" under the TCPA."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014) ("Defendant seeks to arbitrarily limit standing to only the individual whose name appears on the bill. Notably, Defendant does not cite a single case to support this position. Further, this position

28

has been rejected by other courts.”).

*Rombough* was most notably rejected in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at \*5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that “borders on the frivolous.” The *Callier* court went on to state:

> *Rombough‘s* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals who have requested that telemarketers not contact them. While it is possible a third-party may have registered a plaintiff’s phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff’s well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at \*6 (cleaned up). The *Callier* Court is far from alone. *See e.g. Murch v. GPS Cap. Mkts., LLC,* 2025 U.S. Dist. LEXIS 169651, \*38 (D. Or. June 6, 2025) ("After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*."). Indeed, three years after *Callier*, another federal court recently made forcefully clear how far of an outlier *Rombough* was:

> the Court holds that a plaintiff alleging a violation of the TCPA's NDNC Registry provision need not allege or prove that he personally registered his phone number to state a claim. Every court to consider this issue — with one exception — has reached the same conclusion…In *Rombough*, the court focused on the following language from the implementing regulation: "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber *who has registered* his or her telephone number on the"

29

NDNC Registry." 47 C.F.R. § 64.1200(c) (emphasis added). This language was viewed in isolation, and the court did not explain how its construction could be reconciled with the very next sentence of the implementing regulation, which provides that "registrations must be honored indefinitely[.]" *Id.* There is no limitation as to time period; nor is there a limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry.

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917, *8-9 (N.D. Ca., March 3, 2025). This Court should hold the same.

The policy consequences of Defendant's rule underscore its untenability. Millions of Americans change phone numbers every year. If Defendant's theory were correct, each consumer inheriting a number that had already been placed on the Registry would lose their protections. Telemarketers could then flood those numbers with impunity, despite Congress's intent to stop unwanted solicitations. Nothing in the statute, regulations, or case law supports this loophole, and this Court should not create one.

Accordingly, the Court should reject Defendant's invitation to import a personal-registration requirement that appears nowhere in the statute and would eviscerate its protections.

**Conclusion**

Accordingly, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Dated: June 4, 2026

PLAINTIFF, on behalf of herself
and others similarly situated,


By: */s/ Anthony Paronich*
Anthony I. Paronich, *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

31